## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**R.A.W. (RINNIGADE ART WORKS), LLC**, and **CAMBRIDGE CUISINE LLC**, individually and behalf of all others similarly situated,

        Plaintiffs,

v.

**THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD FIRE INSURANCE COMPANY; AND TWIN CITY FIRE INSURANCE COMPANY**,

        Defendants.

**CASE NO.:  1:20-cv-10867-IT**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff R.A.W. (Rinnigade Art Works), LLC ("Rinnigade") and Cambridge Cuisine LLC ("Cambridge Cuisine") (collectively, "Plaintiffs"), both individually and on behalf of all others similarly situated, file this First Amended Class Action Complaint against Defendants The Hartford Financial Services Group, Inc., Hartford Fire Insurance Company and Twin City Fire Insurance Company ("Twin City") (collectively, "Defendants" or "The Hartford").  In support of their claims, Plaintiffs state the following on information and belief, except where specifically identified as being based on personal knowledge:

## INTRODUCTION

1.     On personal knowledge, Plaintiff Rinnigade is a screen printing and embroidery business, which occupies and leases premises located at 561 Windsor Street, Ste. A301, Somerville, Massachusetts 02143.  To protect its business and the income from operation of the business, Rinnigade purchased a property insurance policy issued by Twin City with policy number 08 SBA AA7102 DW.

1

2.      On personal knowledge, Plaintiff Cambridge Cuisine is a restaurant and catering business, which occupies and leases premises located at 1164-1166 Cambridge Street, Cambridge, MA 02139.  To protect its business and the income from operation of the business, Cambridge Cuisine purchased a property insurance policy issued by Twin City with policy number 08 SBA AB8199 SB.

3.      Under Plaintiffs' insurance policies (the "Policies"), Twin City is responsible for receiving and managing claims and loss notices, responding to questions about insurance and coverage and paying claims for covered losses.

4.      The Policies constitute a bilateral contract: Plaintiffs agreed to pay monthly premiums to Twin City, in exchange for Twin City's promises of coverage for certain losses.

5.      Among other types of coverage, the Policies protect Plaintiffs against a loss of business income due to a "suspension" of the business's "operations" due to direct physical loss of or damage to property at the premises of the business. This type of coverage is often referred to as business interruption coverage.

6.      The Policies also provide "Extra Expense" coverage, under which Defendants promised to pay expenses incurred that would not have been incurred absent the physical loss of or physical damage to property at the premises of the business.

7.      The Policies also provide "Business Income from Dependent Properties" coverage, under which Defendants promised to pay for the loss of business income sustained due to direct physical loss of or physical damage at the premises of a dependent property caused by or resulting from a "Covered Cause of Loss."

8.      Additionally, the Policies provide "Civil Authority" coverage, under which Defendants promised to pay for loss of business income sustained when the action of a civil

authority prohibits access to the business premises.

9.      Plaintiffs duly complied with their obligations under the Policies, and paid the requisite premiums.

10.     Beginning in March 2020, Rinnigade was forced to suspend business operations due to the novel coronavirus (hereinafter "COVID-19") and/or actions of civil authorities prohibiting access to and occupancy of the business. This suspension of the business's operations, which is ongoing, has caused Rinnigade to suffer significant losses.

11.     Beginning in March 2020, Cambridge Cuisine was forced to close its Puritan & Company restaurant due to COVID-19 and/or actions of civil authorities prohibiting access to and occupancy of the business. This suspension of the business's operations, which is ongoing, has caused Cambridge Cuisine to suffer significant losses.

12.     Under the Policies, Twin City promised to cover Plaintiffs' losses, and is obligated to pay for them. But in blatant breach of these contractual obligations, as well as Massachusetts General Laws Chapter 93A, §§ 2 and 11 and Chapter 176D § 9, Defendants have refused to pay for these losses.

13.     Defendants have failed to pay for similar losses of other insureds holding policies that are, in all material respects, identical.

## THE PARTIES

14.     On personal knowledge, Plaintiff Rinnigade Art Works is a Massachusetts limited liability corporation.  This business occupies and leases premises located at 561 Windsor Street, Ste. A301, Somerville, Massachusetts 02143.  Among other things, Rinnigade prints tee shirts and other apparel for clients including colleges and universities, including Harvard University, the Massachusetts Institute of Technology ("MIT"), Boston University, Boston College and Tufts

University; and restaurants, including the Island Creek Oyster Bar and the Eastern Standard, which recently went out of business.

15.     On personal knowledge, Cambridge Cuisine LLC ("Cambridge Cuisine") is a Massachusetts limited liability corporation.  This business occupies and leases premises located at 1164-1166 Cambridge Street, Cambridge, Massachusetts 02139 and operates the popular Puritan & Company restaurant there.  In addition to public dining at Puritan & Company, prior to the emergence of COVID-19, Cambridge Cuisine also offered private dining for large groups and operated a wedding venue at a farm in Groton, Massachusetts.  Located between Harvard and MIT, Cambridge Cuisine's business relies heavily on these two institutions.

16.     Defendant The Hartford Financial Services Group, Inc. is a foreign corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.

17.     Defendant Hartford Fire Insurance Company is a foreign corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.  Hartford Fire Insurance Company is a subsidiary of The Hartford Financial Services Group, Inc.

18.     Defendant Twin City Fire Insurance Company ("Twin City") is a foreign corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.  Twin City is a subsidiary of Hartford Fire Insurance Company.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one

member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims occurred within the District of Massachusetts and property that is subject of the action is located in this District.

21.     This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Massachusetts, including, but not limited to, marketing their insurance policies and services within Massachusetts, developing relationships with brokers, agents, and customers within Massachusetts for the purpose of insuring property within Massachusetts; contracting to insure property in Massachusetts, including, but not limited to, the premises insured under Plaintiffs' Policies; breaching contracts, including Plaintiffs' Policies, in Massachusetts by failing to perform acts required by contract to be performed in Massachusetts; and investigating (or failing to investigate) and determining claims for insurance coverage made in Massachusetts, including claims made under Plaintiffs' Policies.

## FACTUAL BACKGROUND

### *The Policies*

22.     On personal knowledge, on or about February 25, 2020, Rinnigade renewed its insurance policy with Twin City.  The policy has a policy period of February 25, 2020 to February 25, 2021.  The scheduled premises under the policy is 561 Windsor Street, Ste. A301, Somerville,

Massachusetts 02143.[1]

23.    On personal knowledge, on or about October 19, 2019, Cambridge Cuisine renewed its insurance policy with Twin City.  The policy has a policy period of October 19, 2019 to October 19, 2020.  The scheduled premises under the policy is 1164-1166 Cambridge Street, Cambridge, Massachusetts 02139.

24.    The Policies are all-risk insurance policies. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

25.    Consistent with the all-risk nature of the Policies, Defendants specifically agreed to pay for all losses caused by "Covered Causes of Loss," defined as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited in the Policies.

26.    In the Policies, Defendants also promised to pay for losses of business income sustained as a result of perils not excluded under the Policies. In particular, Defendants promised to pay for losses of business income sustained as a result of a "suspension" of business "operations" during the "period of restoration."

27.    One type of coverage provided by the Policies is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the policy titled "Business Income."

28.    Pursuant to this section of the Policies, Defendants promised to pay for "the actual loss of business income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration' … caused by direct physical loss of or physical damage to property at the 'scheduled premises.'"

---

[1] A true and correct copy of the policy that was provided to Rinnigade is attached to this complaint as Exhibit "A" and incorporated herein by reference.   A true and correct copy of the policy that was provided to Cambridge Cuisine is attached to this complaint as Exhibit "B" and incorporated herein by reference.

29.     Each of the operative terms of this coverage provision is defined as follows.

30.     "Business Income" means "(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll."

31.     "Suspension" means "(a) The partial slowdown or complete cessation of your business activities; or (b) That part or all of the "scheduled premises" is rendered untentantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy."

32.     "Period of restoration" means the period of time that:

   a.   Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

   b.   Ends on the date when:

      (1) The   property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

      (2) The date when your business is resumed at a new, permanent location.

33.     Another type of coverage provided by the Policies is for Extra Expense.  This coverage is specifically provided for in a section of the Policies titled "Extra Expense."

34.     Pursuant to this section of the Policies, Defendants promised to pay for "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'"

35.     Additionally, under the Policies, Defendants also promised to provide coverage for "Extended Business Income."  Specifically, Defendants promised to:

pay for the actual loss of Business Income incurred during the period that:

      (a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

      (b) Ends on the earlier of:

(i)  The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(ii)  30 consecutive days after the date determined in (1)(a) above.

36.     Defendants also promised to cover "Business Income from Dependent Properties" under the Policies.  Subject to limits of insurance, this coverage requires Defendants to "pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property."

37.     The Policies also provide "Civil Authority" coverage for "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'."  This coverage begins "72 hours after the order of a civil authority and coverage will end at the earlier of: (a) When access is permitted to your 'scheduled premises'; or (b) 30 consecutive days after the order of the civil authority."

38.     This Civil Authority provision is an independent basis for business interruption coverage. That is, it can be triggered even when the standard business interruption coverage is not.

39.     Plaintiffs' Policies do not contain any exclusion that would apply to allow Defendants to deny coverage for losses caused by the interruption of Plaintiffs' businesses and the actions of civil authorities.

40.     Accordingly, because the Policies are all-risk policies and do not specifically exclude the losses that Plaintiffs have suffered, those losses are covered.

*Plaintiffs' covered losses*

41.     The presence of COVID-19 is pervasive and has permeated the Commonwealth of Massachusetts, the country and the globe.  There have been confirmed cases of COVID-19 in every city and town in the Commonwealth, including over 1,000 confirmed cases in Cambridge and over 1,000 confirmed cases in Somervillle. https://www.mass.gov/info-details/covid-19-response-reporting.    The public health emergency created by COVID-19 has prompted actions by civil authorities throughout the United States ("Civil Authority Actions"), including, but not limited to, the Commonwealth of Massachusetts.

42.     Consistent with the actions of all states nationwide, on March 10, 2020, the Governor of Massachusetts, Charlie Baker, declared a public health emergency in response to the appearance of COVID-19 in the Commonwealth of Massachusetts.  As of that date, according to the Centers for Disease Control and Prevention (the "CDC"), there were more than 600 confirmed cases of COVID-19 in the United States, and 25 of those cases resulted in death.  In addition, as of that date, Governor Baker reported that there were 91 presumed positive cases of COVID-19 in the Commonwealth.

On March 15, 2020 Governor Baker issued an Order prohibiting any restaurant, bar or establishment that offers food and drink from permitting on-premises consumption of food or drink but allowing these establishments to offer food for take-out or delivery.  The Order was to take effect on March 17, 2020 and remain in effect until April 5, 2020 unless further extended.  Pursuant to this Order, Cambridge Cuisine, which did not offer food for take-out or delivery at the time, was forced to close its Puritan & Company restaurant on March 16, 2020, re-opening for take-out and delivery only on May 11, 2020.

43.     As of March 22, 2020, the Massachusetts Department of Public Health had reported

646 cases of COVID-19, including 5 deaths, in the Commonwealth of Massachusetts, affecting 13

of the Commonwealth's 14 counties.

44.     On March 23, 2020, Governor Baker issued COVID-19 Order No. 13, which

required all businesses and organizations that do not provide COVID-19 essential services to close

their physical workplaces and facilities to workers, customers and the public from 12:00 noon on

March 24, 2020 to 12:00 noon on April 7, 2020.  The Order also prohibited restaurants, bars and

other establishments that offer food and beverage products to the public from permitting on-

premises consumption of food and beverages but permitted these establishments to continue to

offer food and beverage products for take-out and delivery.  On March 31 2020, Governor Baker

issued COVID-19 Order No. 21, which extended the closures required by COVID-19 Order No.

13 to May 4, 2020.  On April 28, Governor Baker issued COVID-19 Order No. 30, which extended

the closures required by COVID-19 Order Nos. 13 and 21 to May 18, 2020.  Although the

restrictions on businesses put in place by these Orders have been gradually lifted since May 18,

2020, many restrictions remain in effect.

45.     As a result of the foregoing facts and circumstances, there has been direct physical

loss of and/or damage to property at the premises covered under Rinnigade's policy by, among

other things, the property being damaged, access to the property being denied, customers being

prevented from physically occupying the property, the property being physically uninhabitable by

customers, the function of the property being nearly eliminated or destroyed, and/or a suspension

of business operations occurring at the property.  Rinnigade has only been able to operate on a

limited basis.  Rinnigade has also incurred extra expenses in connection with its efforts to avoid

or minimize the suspension of its business, continue its operations, and to repair or replace

property, including, but not limited to, expenses related to cleaning and sanitizing the premises, that it would not otherwise have incurred absent the direct physical loss and/or physical damage to property at the insured premises.  Rinnigade has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties, including, but not limited to, Harvard, MIT, Boston University, Boston College, Tufts University, the Island Creek Oyster Bar and the Eastern Standard.

46.     As a result of the foregoing facts and circumstances, there has been direct physical loss of and/or damage to property at the premises covered under Cambridge Cuisine's policy by, among other things, the property being damaged, access to the property being denied, customers being prevented from physically occupying the property, the property being physically uninhabitable by customers, the function of the property being nearly eliminated or destroyed, and/or a suspension of business operations occurring at the property.  Cambridge Cuisine was forced to completely close its Puritan & Company restaurant for approximately two months and has only been able to operate on a limited basis since reopening.  Cambridge Cuisine has also incurred extra expenses in connection with its efforts to avoid or minimize the suspension of its business, continue its operations, and to repair or replace property, including, but not limited to, expenses related to cleaning and sanitizing the premises, that it would not otherwise have incurred absent the direct physical loss and/or physical damage to property at the insured premises. Cambridge Cuisine also lost thousands of dollars in perishable food that it could not sell. Cambridge Cuisine has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties, including, but not limited to, Harvard and MIT.

47.     Plaintiffs' businesses have suffered a suspension of normal business operations as

defined in the Policies in terms of a significant slowdown of business activities, sustained losses of business income, and incurred expenses.

48.     These losses and expenses have continued through the date of filing of this action.

49.     These losses and expenses are not excluded from coverage under the Policies. And because the Policies are all-risk policies, and Plaintiffs have complied with their contractual obligations, Plaintiffs are entitled to payment for these losses and expenses.

50.     Accordingly, Plaintiffs provided notice of their losses and expenses to Defendants, consistent with the terms and procedures of the Policies.

51.     But contrary to the plain language of the Policies, and to Twin City's corresponding promises and contractual obligations, by letter dated April 15, 2020, Defendants refused to pay for Rinnigade's covered losses and expenses and, by letter dated April 8, 2020, Defendants refused to pay for Cambridge Cuisine's covered losses and expenses.

52.     Each of these claim denial letters was sent by an "Inside Claim Rep" in the "CAT Claim Office" of "The Hartford" in Lexington, Kentucky, and listed Twin City Fire Insurance Company as the "Writing Insurance Company."  These denial letters, as well as similar denial letters sent to claimants whose insurance policies were underwritten by other companies within The Hartford, including, but not limited to, Sentinel Insurance Company, Ltd., suggest that The Hartford Financial Services Group, Inc. and/or Hartford Fire Insurance Company, not Twin City Fire Insurance Company, investigated (or failed to investigate) and denied Plaintiffs' claims, or coordinated the investigation (or failure to investigate) and denial of Plaintiffs' claims.

53.     Indeed, the denial of Plaintiffs' claims for coverage appears to be consistent with the position Defendants have taken nationwide.  As stated on The Hartford's website, "Most property insurance includes business interruption coverage, which often includes civil authority

and dependent property coverage. This is generally designed to cover losses that result from direct physical loss or damage to property caused by hurricanes, fires, wind damage or theft *and is not designed to apply in the case of a virus*."   https://www.thehartford.com/coronavirus/businesses (emphasis added).

54.     In a brazen effort to deter its policyholders from filing claims for coverage, The Hartford's website goes on to state as follows:   "Although most property insurance includes business interruption coverage, coverage may be unavailable or limited because *viruses generally do not cause physical loss or damage to property as required by the policy*. If you want to submit a claim for your business, click below." https://www.thehartford.com/commercial-property-insurance/claims (emphasis added).

55.     If a policyholder is not deterred and clicks below to file a claim, a similar message appears yet again:   "Although most property insurance includes business interruption coverage, coverage may be unavailable or limited because *viruses generally do not cause physical loss or damage to property as required by the policy*. If you want to submit a claim for your business, start here."   https://bi.covidclaim.thehartford.com/reportaclaim (emphasis added).

56.     These representations on The Hartford's website are false and/or deceptive.

57.     The Hartford's online claim form is also confusing and misleading, creating additional hurdles for policyholders trying to obtain coverage.   For example, what appears to be the claim form's lone question related specifically to whether Business Income from Dependent Properties coverage exists reads as follows:   "Are your operations impacted because a business that you depend on to deliver or receive goods or services was impacted by COVID-19?" https://bi.covidclaim.thehartford.com/reportaclaim.   As this question makes no mention of the policyholder's clients or customers, i.e., no mention of businesses who pay the policyholder for

goods or services, it is likely to confuse and mislead policyholders into answering in the negative even if their clients and customers were in fact impacted by COVID-19.

## CLASS ACTION ALLEGATIONS

58. The class claims all derive directly from a single course of conduct by The Hartford: its systematic and uniform refusal to pay insureds for covered losses and the actions taken by civil authorities to suspend business operations.

59. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, both individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

60. Plaintiffs seek to represent a class of persons and entities located in Massachusetts and such other states as the Court may deem appropriate defined as follows (collectively, the "Class" or "Classes"):

a) All persons and entities with Business Income coverage and/or Extended Business Income coverage under a property insurance policy issued by Twin City that suffered a suspension of business operations and for which Defendants have either actually denied or stated that they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses (the "Business Income Coverage Class").

b) All persons and entities with Extra Expense coverage under a property insurance policy issued by Twin City that suffered a suspension of business operations and for which Defendants have either actually denied or stated that they will deny a claim for the expenses or has otherwise failed to acknowledge, accept as a covered expense, or pay

for the covered expenses (the "Extra Expense Coverage Class").

      c)     All persons and entities with Business Income from Dependent Properties coverage under a property insurance policy issued by Twin City that suffered an actual loss of Business Income caused by direct physical loss or physical damage at a dependent property or properties, and for which Defendants have either actually denied or stated that they will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses (the "Business Income from Dependent Properties Coverage Class").

      d)     All persons and entities with Civil Authority coverage under a property insurance policy issued by Twin City that suffered an actual loss of Business Income and/or Extra Expense caused by an action of a civil authority that prohibited access to the premises, and for which Defendants have either actually denied or stated that they will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses (the "Civil Authority Coverage Class").

      e)     All persons and entities engaged in the conduct of trade or commerce in the Commonwealth of Massachusetts (the "Massachusetts Class") with Business Income coverage, Extended Business Income coverage, Extra Expense coverage, Business Income from Dependent Properties Coverage and/or Civil Authority coverage under a property insurance policy issued by Defendants that suffered a suspension of business operations and for which Defendants have either actually denied or stated that they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses.

61.     Excluded from each of the proposed Classes are Defendants and any of their

members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

62.     Plaintiffs reserve the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

63.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

64.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across Massachusetts and the United States.

65.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Predominance of Common Issues**

66.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

16

a)      Whether Plaintiffs and Class members suffered a covered loss under the policies issued by Twin City to members of the Class;

b)      Whether Defendants wrongfully denied all claims based on the assertion that any suspension, interruption or slowdown of business being attributable to COVID-19 is not a covered loss;

c)      Whether Twin City's Business Income coverage applies to a suspension of business caused by the presence or threat of COVID-19;

d)      Whether Twin City's Extra Expense coverage applies to expenses incurred to minimize the risks presented by COVID-19;

e)      Whether Twin City's Business Income from Dependent Property coverage applies to actual loss of Business Income caused by direct physical loss or physical damage at a dependent property or properties caused by the presence or threat of COVD-19 and/or the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business;

f)      Whether Twin City's Civil Authority coverage applies to a loss of Business Income caused by the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business;

g)      Whether Twin City has breached its contracts of insurance through a uniform and blanket denial of all claims for business losses related to COVID-19 and/or the actions of civil authorities taken in response to the risks presented by COVID-19;

h)      Whether Defendants misrepresented pertinent facts or insurance policy provisions relating to coverages at issue, refused to pay claims without conducting a reasonable investigation based upon all available information, and/or failed to effectuate

prompt, fair and equitable settlements of claims in which liability has become reasonably clear in violation of M.G.L. c. 176D § 9 and M.G.L. c. 93A §§ 2 and 11.

       i)       Whether Plaintiffs and Class members suffered damages as a result of Defendants' actions; and

       j)       Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**Typicality**

67.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of Class members and arise from the same course of conduct by Defendants. Plaintiffs and the other Class members are all similarly affected by Defendants' refusal to pay claims under their property insurance policies. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.  The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

68.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs have retained counsel with substantial experience in prosecuting complex class action litigation.

69.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of Class members.

**Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests**

70.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiffs seek class-wide adjudication as to the interpretation and scope of Defendants' property insurance policies that use the same language and terms as the Policies. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

**Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate**

71.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The Class members' claims all derive directly from Defendants' systematic and uniform refusal to pay insureds for any losses suffered due to risk of infection of COVID-19 and/or actions of civil authorities prohibiting access to and occupancy of their businesses. Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories.

**Superiority**

72.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

73.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for

all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

74.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

75.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION

## COUNT I:  DECLARATORY JUDGMENT

### (On behalf of the Business Income Coverage Class against Twin City)

76.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

77.     Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

78.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

79.     Plaintiffs' Policies, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policies and the policies of other Business Income Coverage Class members.

80.     In the Policies, Twin City promised to pay for losses of business income sustained as a result of perils not excluded under the Policies. Specifically, Twin City promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

81.     Plaintiffs and Business Income Coverage Class members suffered direct physical loss of and/or damage to Plaintiffs' insured premises and other Class members' insured premises, resulting in interruptions or suspensions of business operations at the premises. These suspensions and interruptions have caused Plaintiffs and Business Income Coverage Class members to suffer losses of business income.

82.     These suspensions and interruptions, and the resulting losses, triggered business income coverage under the Policies and other Business Income Coverage Class members' policies.

83.     Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

84.     Defendants, without justification, dispute that the Policies and other Business Income Coverage Class members' policies provide coverage for these losses.

85.     Plaintiffs seek a Declaratory Judgment that their Policies and other Business Income Coverage Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

86.     An actual case or controversy exists regarding Plaintiffs' and other Business Income Coverage Class members' rights and Twin City's obligations to reimburse Plaintiffs and other Business Income Coverage Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs request that this Court enter a Declaratory Judgment declaring that Plaintiffs' Policies and other Business Income Coverage Class members' policies provide coverage for Class members' losses of business income.

## COUNT II:  BREACH OF CONTRACT

### (On behalf of the Business Income Coverage Class against Twin City)

87.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

88.     Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

89.     Plaintiffs' Policies, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policies.

90.     In the Policies, as well as the policies of other Business Income Coverage Class members, Twin City promised to pay for losses of business income incurred as a result of perils not excluded under the Policies. Specifically, Twin City promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

91.     Plaintiffs and Business Income Coverage Class members have suffered a direct physical loss of and/or damage to their insured premises as a result of interruptions or suspensions of business operations at these premises.   These interruptions and suspensions have caused Business Income Coverage Class members to suffer losses of business income.

92.     These losses triggered business income coverage under both Plaintiffs' Policies and other Business Income Coverage Class members' policies.

93.     Plaintiffs and the other Business Income Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

94.     Defendants, without justification and in bad faith, have denied coverage and refused performance under Plaintiffs' Policies and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Twin City is in breach of Plaintiffs' Policies and other Business Income Coverage Class members' policies.

95.     As a result of Twin City's breaches of Plaintiffs' Policies and other Business Income Coverage Class members' policies, Plaintiffs and other Business Income Coverage Class members have suffered actual and substantial damages for which Twin City is liable.

96.     WHEREFORE, Plaintiffs, both individually and on behalf of other Business Income Coverage Class members, seek compensatory damages resulting from Twin City's breaches of Plaintiffs' Policies and other Class Members' policies and seek all other relief deemed appropriate by this Court.

**COUNT III:  DECLARATORY JUDGMENT**

**(On behalf of the Extra Expense Coverage Class against Twin City)**

97.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

98.     Plaintiffs bring this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

99.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

100.     Plaintiffs' Policies, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Twin City paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by Plaintiffs' Policies and the policies of other Expense Coverage Class members.

101.     Specifically, Twin City promised to pay for Extra Expenses incurred by Plaintiffs and other Extra Expense Coverage Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

102.     Plaintiffs and Extra Expense Coverage Class members suffered direct physical loss of and/or damage to their insured premises, resulting in suspensions or interruptions of business operations at these premises.  As a result, Plaintiffs and other Extra Expense Coverage Class members have incurred Extra Expenses, as defined in Plaintiffs' Policies and other Extra Expense Coverage Class members' policies.

103.     These Expenses triggered Extra Expense coverage under Plaintiffs' Policies and

other Extra Expense Coverage Class members' policies.

104.     Plaintiffs and the other Extra Expense Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

105.     Defendants, without justification, dispute that Plaintiffs' Policies and other Extra Expense Coverage Class members' policies provide coverage for these Extra Expenses.

106.     Plaintiffs, both individually and on behalf of the other members of the Extra Expense Coverage Class, seek a Declaratory Judgment that their Policies, and the policies of other members of the Extra Expense Coverage Class, provide coverage for these Extra Expenses.

107.     An actual case or controversy exists regarding Extra Expense Coverage Class members' rights and Twin City's obligations under Extra Expense Coverage Class members' policies to reimburse Class members for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs request that this Court enter a Declaratory Judgment declaring that Plaintiffs' Policies and other Extra Expense Coverage Class members' policies provide coverage for Class members' Extra Expenses.

## COUNT IV: BREACH OF CONTRACT

### (On behalf of the Extra Expense Coverage Class against Twin City)

108.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

109.     Plaintiffs bring this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

110.     Plaintiffs' Policies, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for

promises to pay Extra Expense Coverage Class members' losses for claims covered by policies.

111.    Specifically, Twin City promised to pay for Extra Expenses incurred by Plaintiffs and other Extra Expense Coverage Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

112.    Plaintiffs and Extra Expense Coverage Class members suffered direct physical loss of and/or damage to Plaintiffs' insured premises and other Extra Expense Coverage Class members' insured premises, resulting in suspensions and interruptions of business operations at these premises.  These suspensions and interruptions have caused Extra Expense Coverage Class members to incur Extra Expenses.

113.    These Expenses triggered Extra Expense coverage under Plaintiffs' Policies and other Extra Expense Coverage Class members' policies.

114.    Plaintiffs and the other Extra Expense Coverage Class members have complied with all applicable provisions of Plaintiffs' Policies, including payment of premiums.

115.    Defendants, without justification and in bad faith, have denied coverage and refused performance under Plaintiffs' Policies and other Extra Expense Coverage Class members' policies by denying coverage for these Extra Expenses. Accordingly, Twin City is in breach of Plaintiffs' Policies and other Extra Expense Coverage Class members' policies.

116.    As a result of Twin City's breaches of Plaintiffs' Policies and other Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Twin City is liable.

WHEREFORE, Plaintiffs, individually and on behalf of other Extra Expense Coverage

Class members, seek compensatory damages resulting from Twin City's breaches of Plaintiffs' Policies and other Extra Expense Coverage Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT V:  DECLARATORY JUDGMENT

**(On behalf of the Business Income from Dependent Properties Coverage Class against Twin City)**

117.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

118.    Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income from Dependent Properties Coverage Class.

119.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

120.    Plaintiffs' Policies, as well as the policies of other Business Income from Dependent Properties Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for promises to pay Dependent Properties Coverage Class members' losses for claims covered by the policies.

121.    In Plaintiffs' Policies, as well as the policies of other Business Income from Dependent Properties Coverage Class members, Twin City promised to pay for losses of business income sustained as a result of perils not excluded under the policies. Specifically, Twin City promised to pay for losses of business income sustained due to direct physical loss or physical damage at the premises of a dependent property.

122.    Plaintiffs and Dependent Properties Coverage Class members suffered losses of business income due to direct physical loss and/or physical damage at the premises of dependent properties.

123.     These losses triggered business income from dependent properties coverage under Plaintiffs' Policies and other Dependent Properties Coverage Class members' policies.

124.     Plaintiffs and the other Dependent Properties Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

125.     Defendants, without justification, dispute that Plaintiffs' Policies and other Dependent Properties Coverage Class members' policies provide coverage for these losses.

126.     Plaintiffs seek a Declaratory Judgment that their Policies and other Dependent Properties Coverage Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

127.     An actual case or controversy exists regarding Plaintiffs' and other Dependent Properties Coverage Class members' rights and Twin City's obligations to reimburse Plaintiffs and other Dependent Properties Coverage Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs request that this Court enter a Declaratory Judgment declaring that Plaintiffs' Policies and other Dependent Properties Coverage Class members' policies provide coverage for Class members' losses of business income from dependent properties.

## COUNT VI:  BREACH OF CONTRACT

### (On behalf of the Business Income from Dependent Properties Coverage Class against Twin City)

128.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

129.     Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income from Dependent Properties Coverage Class.

130.    Plaintiffs' Policies, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for promises to pay Dependent Properties Coverage Class members' losses for claims covered by their policies.

131.    In Plaintiffs' Policies, as well as the policies of other Business Income Coverage Class members, Twin City promised to pay for losses of business income incurred as a result of perils not excluded under the policies. Specifically, Twin City promised to pay for losses of business income sustained due to direct physical loss or physical damage at the premises of a dependent property.

132.    Plaintiffs and Dependent Properties Coverage Class members have suffered losses of business income due to direct physical loss and/or physical damage at the premises of dependent properties.

133.    These losses triggered business income coverage under both Plaintiffs' Policies and other Dependent Properties Coverage Class members' policies.

134.    Plaintiffs and the other Dependent Properties Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

135.    Defendants, without justification and in bad faith, have denied coverage and refused performance under Plaintiffs' Policies and other Dependent Properties Coverage Class members' policies by denying coverage for these losses. Accordingly, Twin City is in breach of Plaintiffs' Policies and other Class members' policies.

136.    As a result of Twin City's breaches of Plaintiffs' Policies and other Dependent Properties Coverage Class members' policies, Plaintiffs and other Dependent Properties Coverage

Class members have suffered actual and substantial damages for which Twin City is liable.

WHEREFORE, Plaintiffs, both individually and on behalf of other Class members, seek compensatory damages resulting from Twin City's breaches of Plaintiffs' Policies and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT VII: DECLARATORY JUDGMENT

### (On behalf of the Civil Authority Coverage Class against Twin City)

137.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

138.    Plaintiffs bring this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.

139.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

140.    Plaintiffs' Policies, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses for claims covered by the policies.

141.    In Plaintiffs' Policies and other Class members' policies, Twin City promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

142.    Plaintiffs and other Civil Authority Coverage Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited public access to

insured premises under Plaintiffs' Policies and Civil Authority Coverage Class members' policies.

143.    These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiffs' Policies and other Civil Authority Coverage Class members' policies.

144.    Plaintiffs and the other Class members have complied with all applicable provisions of their policies, including payment of premiums.

145.    Defendants, without justification, dispute that Plaintiffs' Policies and other Class members' policies provides coverage for these losses.

146.    Plaintiffs seek a Declaratory Judgment that their Policies and other Civil Authority Coverage Class members' policies provide coverage for the losses that they have sustained and extra expenses they have incurred caused by actions of civil authorities.

147.    An actual case or controversy exists regarding Civil Authority Coverage Class members' rights and Twin City's obligations under Civil Authority Coverage Class members' policies to reimburse Civil Authority Coverage Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs, both individually and on behalf of other Civil Authority Coverage Class members, requests that this Court enter a Declaratory Judgment declaring that Plaintiffs' Policies provide Civil Authority coverage for the losses and extra expenses incurred by Plaintiffs and the other Class members.

## COUNT VIII: BREACH OF CONTRACT

### (On behalf of the Civil Authority Coverage Class against Twin City)

148.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

149.    Plaintiffs bring this Count both individually and on behalf of the other members of

the Civil Authority Coverage Class.

150.    Plaintiffs' Policies, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Twin City was paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses and expenses covered by their policies.

151.    In Plaintiffs' Policies and other Civil Authority Coverage Class members' policies, Twin City promised to pay for losses of business income sustained and extra expenses incurred when a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

152.    Plaintiffs and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited public access to insured premises under Plaintiffs' Policies and Civil Authority Coverage Class members' policies.

153.    These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiffs' Policies and other Civil Authority Coverage Class members' policies.

154.    Plaintiffs and the other Civil Authority Coverage Class members have complied with all applicable provisions of their policies, including payment of premiums.

155.    Defendants, without justification and in bad faith, have refused performance under Plaintiffs' Policies and other Civil Authority Coverage Class members' policies by denying coverage for these losses and expenses. Accordingly, Twin City is in breach of Plaintiffs' Policies and other Civil Authority Coverage Class members' policies.

156.    As a result of Twin City's breaches of Plaintiffs' Policies and other Civil Authority Coverage Class members' policies, Plaintiffs and other Civil Authority Coverage Class members

have suffered actual and substantial damages for which Twin City is liable.

WHEREFORE, Plaintiffs seek compensatory damages resulting from Twin City's breaches of Plaintiffs' Policies and other Civil Authority Coverage Class members' policies. and seek all other relief deemed appropriate by this Court.

## COUNT IX:  VIOLATION OF MASSACHUSETTS GENERAL LAWS, CHAPTER 93A

### (On Behalf of the Massachusetts Class Against All Defendants)

157.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

158.   Plaintiffs bring this Count both individually and on behalf of other members of the Massachusetts Class pursuant to M.G.L. c. 93A §§ 2 and 11.  M.G.L. c. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. c. 93A § 11 permits any person engaged in the conduct of trade or commerce and injured by a violation of M.G.L. c. 93A § 2 to bring a civil action, including a class action, for damages and injunctive relief.

159.   Plaintiffs allege that Defendants willfully and knowingly committed unfair and deceptive business acts and/or practices in violation of M.G.L. c. 93A §§ 2 and 11.

160.   Defendants have engaged in unfair claims settlement practices in violation of, *inter alia*, M.G.L. c. 176D § 3(9)(a), (d) and (f) by, among other things, misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, refusing to pay claims without conducting a reasonable investigation based upon all available information, and failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

161.   For example, on The Hartford website, Defendants misrepresented that their

business interruption coverage "is generally designed to cover losses that result from direct physical loss or damage to property caused by hurricanes, fires, wind damage or theft is not designed to apply in the case of a virus." This statement is not true in the context of the coverages provided in Plaintiffs' Policies and other Massachusetts Class members' policies.  In this regard, although Plaintiffs' Policies and other Massachusetts Class members' policies contain language excluding coverage in the case of a virus, they contain a second endorsement for Massachusetts policyholders that explicitly excises this language from the policy. Ex. A, at 88-90; Ex. B, at 82-84.  As such, Defendants' statements to the effect that their business interruption coverage is not designed to apply in the case of a virus constitute "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" in violation of both M.G.L. c. 176D § 3(9)(a) and M.G.L. c. 93A §§ 2 and 11.

162.    Similarly, as detailed above, Defendants' use of a confusing and misleading online claim form and then denying claims based on the information provided on that claim form, in combination with its other unfair claims settlement practices constitute "refusing to pay claims without conducting a reasonable investigation based upon all available information" in violation of both M.G.L. c. 176D § 3(9)(d) and M.G.L. c. 93A §§ 2 and 11.

163.    Likewise, in light of Plaintiffs' Policies and other Massachusetts Class members' policies containing an endorsement explicitly excising language excluding and/or limiting coverage in the case of a virus, The Hartford's blanket denials of coverage for claims arising due to COVID-19 and/or actions of civil authorities, together with its other unfair claims settlement practices, constitute "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" in violation of both M.G.L. c. 176D § 3(9)(f) and M.G.L. c. 93A §§ 2 and 11.

164.     As a result of these violations, which occurred primarily and substantially within the Commonwealth of Massachusetts, Plaintiffs and other members of the Massachusetts Class were injured by suffering insured losses for which Defendants have refused to provide coverage.

165.     These acts and practices are unfair and deceptive in material respects, offend public policy, are immoral, unethical, oppressive and unscrupulous and violate M.G.L. 176D § 3(9) and M.G.L. c. 93A § 2. These acts and practices also violate 940 C.M.R. § 3.05, which provides, *inter alia*, that "[n]o claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect."

166.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the Massachusetts Class have suffered injury.

167.     Plaintiffs and other members of the Massachusetts Class would not have incurred these losses if Defendants had not engaged in acts and practices that were unfair and deceptive.

168.     Based on the foregoing, Plaintiffs and the other members of the Massachusetts Class are entitled to all remedies available pursuant to M.G.L c. 93A, including, but not limited to, refunds, actual damages, double or treble damages, attorneys' fees and other reasonable costs.

169.     Pursuant to M.G.L. c. 231, § 6B, Plaintiffs and other members of the Massachusetts Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' wrongful conduct.  The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiffs and other members of the Massachusetts Class are entitled to interest in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in its favor and against Defendants, as follows:

A.   Entering an order certifying the proposed Classes, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

B.   Entering declaratory judgments on Counts I, III, V and VII in favor of Plaintiffs and the members of the Business Income Coverage Class, Extra Expense Coverage Class, Business Income from Dependent Properties Coverage Class and Civil Authority Coverage Class providing that:

    i.   All Business Income, Extra Expense, Business Income from Dependent Properties and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiffs' Policies and Class members' policies; and

    ii.   Twin City is obligated to pay for the full amount of the Business Income, Extra Expense, Business Income from Dependent Properties and Civil Authority losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above as insured and covered losses and expenses under Plaintiffs' Policies and Class members' policies;

C.   Entering judgments on counts II, IV, VI, VIII and IX in favor of Plaintiffs and the members of the Business Income Coverage Class, Extra Expense Coverage Class,

Business Income from Dependent Properties Class, Civil Authority Coverage Class and Massachusetts Class, and awarding actual, double, treble and/or other statutory damages in amounts to be determined at trial, as applicable;

D.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: August 3, 2020             **WHATLEY KALLAS, LLP**

*/s/ Patrick J. Sheehan*
Patrick J. Sheehan (BBO# 639320)
101 Federal Street, 19th Floor
Boston, MA 02110
Tel:  (617) 573-5118
Fax:  (800) 922-4851
psheehan@whatleykallas.com

Leonard A. Frisoli (BBO# 638201)
Zaheer A. Samee (BBO# 667751)
Frisoli Associates, P.C.
Bulfinch Square
43 Thorndike Street
Cambridge, MA 02141
Tel:  (617) 494-0200
Fax:  (617) 494-9068
laf@frisolilaw.com
zas@frisolilaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF on August 3, 2020.

/s/ Patrick J. Sheehan
Patrick J. Sheehan